Benjamin Galdston (SBN 211114)
BERGER MONTAGUE PC
12544 High Bluff Drive, Suite 340
San Diego, CA 92130
Tel: (619) 489-0300
bgaldston@bm.net

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MICHAEL REID LEWIS, individually and on behalf of those similarly situated, | Case No. 2:20-cv-00531-JLS-KES |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| TRANSUNION RENTAL SCREENING SOLUTIONS, INC., | |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................... 1

PARTIES AND JURISDICTION................................................................ 2

FACTUAL ALLEGATIONS ..................................................................... 3

CLASS ACTION ALLEGATIONS .......................................................... 14

COUNT I
    15 U.S.C. § 1681e(b) On behalf of Plaintiff, the
    Inaccurate Matching Class and the Dispute Sub-Class ......................... 17

COUNT II
    15 U.S.C. § 1681g On Behalf of Plaintiff and the FCRA Disclosure Class ......... 18

COUNT III
    Cal. Civ. Code § 1785.14(b) On Behalf of Plaintiff individually
    and the California Inaccurate Matching Class...................................... 18

COUNT IV
    Cal. Civ. Code § 1785.18 Asserted on behalf of Plaintiff
    and the California Disclosure Class................................................... 19

COUNT V
    Cal. Bus. & Prof. Code § 17200 Asserted on behalf of
    Plaintiff Individually and on behalf of the California Inaccurate
    Matching Class and California Disclosure Class ................................. 19

PRAYER FOR RELIEF ......................................................................... 21

JURY DEMAND .................................................................................. 22

COMES NOW, Michael Reid Lewis ("Plaintiff"), on behalf of himself and the classes set forth below and states as follows:

## **INTRODUCTION**

1)      This is a class action for damages and injunctive relief brought against Defendant TransUnion Rental Screening Solutions, Inc. ("Defendant" or "TU Rental") pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785.1-1785.36, *et seq.*, and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

2)      Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports generated from its database and furnishes these consumer reports to landlords who use the reports to make decisions regarding whether to rent to certain consumers.

3)      Defendant falsely reported to Plaintiff's potential landlord that Plaintiff had been charged and convicted of four criminal offenses.  In fact, the convictions Defendant reported belonged to individual(s) with a similar name to Plaintiff, but none of the reported convictions belonged to Plaintiff.

4)      Defendant's reporting cost Plaintiff his chance to rent the property of his choice, caused him serious distress and embarrassment, and caused him financial loss.

5)      Many online criminal records lack meaningful personal identifying information about the offender.  Many such records only contain the offender's name, and do not contain any other identifiers, such as date of birth, age, address, or Social Security Number.

6)      Relying on such public records, Defendant matched Plaintiff (who has very common first and last names) with records that did not belong to him.  Given the paucity of information in the underlying online public records, the only personal identifier Defendant could have used is the Plaintiff's name.  Unbelievably, the people

to whom Plaintiff was matched not only have different names than Plaintiff, they also have different names than one another, making it readily apparent that the records reported could not possibly belong to a single person, much less to Plaintiff.

7)      Defendant's matching procedures are not reasonable procedures to ensure the maximum possible accuracy of the records it reports.  Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being inaccurate.

8)      Furthermore, upon request, Defendant does not accurately identify the sources of the records it reports, causing confusion for class members who wrongly assume that there is a public record somewhere that has been attributed to them.

9)      On behalf of himself and several classes of similarly situated individuals, Plaintiff brings claims pursuant to the FCRA, CCRAA and UCL.

### PARTIES AND JURISDICTION

10)      Individual and representative Plaintiff Michael Reid Lewis is a resident of San Pedro, California.

11)      Plaintiff is a natural person and a "consumer" as protected and governed by the FCRA and CCRAA.

12)      Defendant TransUnion Rental Screening Solutions, Inc. provides consumer reports for rental screening purposes.  Defendant sells background reports containing, *inter alia*, information about consumers' criminal backgrounds to prospective landlords.  Defendant is a consumer reporting agency as contemplated by the FCRA, 15 U.S.C. § 1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

13)      Among other things, Defendant provides background checks and credit reports to landlords for their use in deciding whether to rent to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

2

14)     Defendant is a Delaware corporation headquartered in Illinois.

15)     The Court has personal jurisdiction over Defendant.  Defendant conducts substantial business in this District, including issuing background checks and credit reports on residents of this District, including Plaintiff.

16)     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1681p and Cal. Civ. Code § 410.10.

## FACTUAL ALLEGATIONS

*Defendant's Acquisition and Use of Criminal Record
Information for Background Reporting*

17)     For many years, Defendant has purchased records of criminal cases ("criminal record information") from one or more private sources known as "vendors," rather than retrieving the actual underlying court records, for purposes of creating and selling tenant screening reports to prospective landlords and rental property managers.

18)     The tenant screening reports that Defendant sells to landlords and property managers about thousands of consumers each year are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d) because they are used and expected to be used for multiple purposes governed by 15 U.S.C. § 1681b and the criminal record information included within bears on the, reputation, personal characteristics, and mode of living of the subjects of the reports.

19)     Therefore, Defendant is required by the FCRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the consumer reports it prepares relates.  15 U.S.C. § 1681e(b).

20)     Likewise, Defendant's reports are "consumer credit reports" within the meaning of CAL. CIV. CODE 1785.3 because the information contained therein bears upon consumers' credit worthiness, credit standing, or credit capacity, and is used or expected to be used as a factor in establishing the consumer's eligibility for the hiring of a dwelling unit.

3

21)     Therefore, Defendant is required by the CCRAA to follow reasonable procedures to assure the maximum possible accuracy of the information concerning the individual about whom the report relates.  Cal. Civ. Code 1786.14(b).

22)     Similarly, Defendant's tenant screening reports are "investigative consumer reports" within the meaning of Cal. Civ. Code 1786.2 because the information contained therein bears upon consumers' character, general reputation, personal characteristics, and mode of living.

23)     Therefore, Defendant is required by the Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code §§ 1786-1786.60, *et seq.*, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.   Cal. Civ. Code § 1786.20(b).

24)     However, Defendant does not follow such procedures, but instead fails to obtain sufficient data to provide accurate information on the reports it prepares and sells.  Defendant thus regularly and illegally includes criminal record information on reports which does not pertain to the individual who is the subject of the report.  Defendant also regularly and illegally issues reports containing so little information about the offenses associated with the consumers that the reports cannot be considered accurate under the FCRA, CCRAA and ICRAA.

25)     Defendant's practices and procedures regarding the reporting of criminal record information, including the failure to obtain, use, and report sufficient identifying information and information about the record at issue, cause widespread harm to consumer and to interstate commerce as a whole.

26)     This phenomenon is the result of Defendant's intentional business decisions.  The criminal record information Defendant obtains from its vendor(s) is merely a summary which does not include all of the information or the most up to date

4

information available at the courthouses or government offices where the records themselves are housed in conjunction with the functioning of those entities.

27)     Defendant knows that its vendor(s) make mistakes in the condensed, summary eviction information that it purchases for background reporting purposes, and that such information routinely does not contain basic personal identifying information such as date of birth, Social Security Number, or middle name, and that such information routinely does not include an accurate description of the charge and/or disposition.

28)     Purchasing distilled, incomplete civil public records information was the impetus for regulatory investigations of its corporate parent and partner, Trans Union, LLC and other consumer reporting agencies, and dozens of FCRA class action lawsuits throughout the United States, which ultimately resulted in a nationwide settlement. *Clark v. Trans Union, LLC*, No. 3:15-cv-00391-MHL, ECF No. 272 (E.D. Va. Aug. 29, 2018).

29)     For example, in 2015, the Consumer Financial Protection Bureau ("CFPB") noted that consumer reporting agencies ("CRAs") did not adequately oversee their public records vendors:

> Examiners found that the oversight of public records providers by one or more CRAs was weak and required corrective action. For example, one or more CRAs had never conducted a formal audit of their public records providers. In addition, one or more CRAs did not have defined processes to verify the accuracy of public record information provided by their public records providers. In light of such weaknesses, Supervision directed one or more CRAs to establish and implement suitable and effective oversight of public records providers.[1]

---

[1]     CFPB, *Supervisory Highlights*, 2.1.1 (Summer 2015), available at http://files.consumerfinance.gov/f/201506_cfpb_supervisory-highlights.pdf (last viewed July 9, 2018).

30)      Further, the CFPB expressed concern about the accuracy of public records information that the consumer reporting agencies imported into their consumer databases:

> Examiners reviewed quality control processes with respect to the accuracy of consumer reports produced by one or more CRAs and found that, with certain exceptions, there were no quality control policies and procedures to test compiled consumer reports for accuracy. While processes existed to analyze and improve the quality of incoming data, there was no post-compilation report review or sampling to test the accuracy of consumer reports. In light of these weaknesses, Supervision directed one or more CRAs to develop a plan with implementation timelines to establish quality controls that regularly assess the accuracy and integrity of the consumer reports and consumer file disclosures produced.[2]

31)      Despite the fact that it is fully aware of the problems associated with incomplete information purchased from vendors, Defendant has not stopped acquiring and profiting from incomplete and inaccurate information.

32)      Defendant markets its services to landlords by noting that they can provide "accurate credit, criminal and eviction histories on renters." It purports to offer "more accurate matching" using "advanced matching logic to match your rental applicants to our report histories."[3]

33)      Defendant further claims that its background screening products provide "[b]road coverage and more precise matching capabilities provide comprehensive, targeted and filtered screening results."[4]

*Defendant's Failure to Fully Disclose Information to Consumers*

---

[2]      *Id*. at 2.1.2.

[3]      *Tenant Screening | TransUnion SmartMove | Tenant Background Check*, https://www.transunion.com/product/smartmove (last visited Oct. 2, 2019).

[4]      https://www.transunion.com/product/background-data-solutions (last visited Oct. 2, 2019).

FIRST AM. CLASS ACTION COMPLAINT
Case No. 2:20-cv-00531-JLS-KES

34)     Additionally, and despite the clear mandate of FCRA section 1681g(a)(1)-(2), and CCRAA section 1785.18, Defendant never identifies on reports or discloses to consumers the source(s) from which it obtains the criminal record information it includes on its reports to third parties.

35)     The FCRA mandates that upon request, consumer reporting agencies such as Defendant must "clearly and accurately disclose to the consumer" who requests his or her file "the sources" that supplied any "information" to the consumer reporting agency about that consumer.  15 U.S.C. § 1681g(a)(2).

36)     The CCRAA requires that investigative consumer reporting agencies which include matters of public record on their reports "shall specify in any report containing public record information the source from which that information was obtained…."  CAL. CIV. CODE § 1785.18.

37)     Identification of the true source of a consumer reporting agency's information is vital to correcting errors and to informing consumers about who is furnishing important information about them.

38)     Defendant does not obtain criminal records information directly from public sources.

39)     Much of the criminal records information Defendant obtains comes from private vendors.

40)     Defendant conceals the identities of its source(s) for criminal record information are private vendors, including other consumer reporting agencies, that supply Defendant with incomplete information on a bulk basis.

41)     Defendant is more interested in maintaining the appearance that it obtains actual public records from true government sources and in protecting their low-cost private sources of public record data than in disclosing to consumers vital information that Congress required consumer reporting agencies to disclose in FCRA section

FIRST AM. CLASS ACTION COMPLAINT
Case No. 2:20-cv-00531-JLS-KES

1681g(a)(2), and which California state law requires them to provide pursuant to CCRAA section 1785.18.

42) Defendant fails, as a matter of common policy and procedure, to provide consumers who request file disclosures with all information Defendant maintains about the requesting consumer, including never disclosing to consumers the source of the criminal record information collected and reported about them.

43) Defendant's practices not only violate the FCRA and CCRAA as a matter of law, the practices exact serious consequences on rental housing applicants and interstate commerce. Consumers are prejudiced in their ability to obtain leased housing and are deprived of complete information regarding the nature and source(s) of the information Defendant maintains and sells about them.

*The Experience of Plaintiff Michael Lewis*

44) In June 2019, Plaintiff and his wife were seeking new housing. Having located a property that they wanted to rent in Pine Mountain Club, California, they quickly moved to apply. Plaintiff paid a fee to their broker for the rental application and associated background check.

45) Plaintiff and his wife were surprised to receive an email on June 14, 2019, which stated their application was being denied "based in whole, or in part, on the information in your Screening Report provided by TransUnion, the Credit Reporting Agency."

46) Plaintiff obtained a copy of the report Defendant prepared about him, which is attached as Exhibit A, and was shocked to see that it contained criminal convictions from areas of California where he had never lived, specifically Glenn County, Orange County, Sacramento and Contra Costa County. Plaintiff was never convicted of any of the offenses listed on the report, and none of the reported records actually related to him.

47) In fact, in a brief call to some of the courthouses where some of the

8

associated records were kept, Plaintiff was able to discover that the records related to other individual(s).  Notably, Michael Lewis is an exceedingly common name.

48)     Importantly, at least one of these individual(s) did not share Plaintiff's middle name, which is Reid, and one of them had a suffix in their name that Plaintiff does not.  For example, the Sacramento record relates to someone named Michael Rachmon Lewis, and the Glenn County record relates to a Michael R. Lewis, Junior.

49)     Based on the fact that the middle names on the records reported by Defendant did not match Plaintiff's middle name, it should have been immediately obvious to Defendant that the criminal offenders in the reported criminal cases were not Plaintiff.

50)     Plaintiff disputed these results with Defendant, and after a reinvestigation, Defendant created a revised report which removed all of the convictions.  However, Plaintiff had already lost the opportunity to rent his preferred housing, and despite a request, he was unable to receive a refund of his application fee, causing monetary harm.

51)     Plaintiff is not a homeowner, and is therefore likely to be applying for rental housing in the future.

52)     Tenant screening background checks in general, and Defendant's background checks in particular, are ubiquitous.  (*See* https://www.mysmartmove.com/, accessed 1/30/20, noting that Defendant's checks are used by over 400 companies and 3.7 million landlords).

53)     If Defendant's procedures are not corrected, Plaintiff is likely to encounter the same errors on future reports.

54)     The report that Defendant prepared about Plaintiff did not identify the vendor from whom Defendant received the reported criminal record information.  This omission made it impossible to fix the problem at its source - Plaintiff does not and cannot know if the vendor is supplying similarly incomplete information to other

consumer reporting agencies.

55)    On July 31, 2019, Plaintiff, through counsel, sent Defendant a request for his full file pursuant to 15 U.S.C § 1681g.  Plaintiff received Defendant's response on August 9, 2019.

56)    On that response, Defendant lists as its "sources of data" the four courts where the erroneously matched convictions occurred.  This response was inaccurate, as Defendant failed to disclose the third-party vendor from whom it received the information.

*Facts Demonstrating That Defendant Willfully Failed To Comply With The FCRA*

57)    If Defendant had reasonable procedures to ensure maximum possible accuracy, it would have determined that the offenses it reported did not belong to Plaintiff.

58)    Based on the paucity of information available in the public records Defendant reported about Plaintiff, it is apparent that the only personal identifier Defendant could have relied on is Plaintiff's name.  On its face, matching where the only personal identifier used is the name is unreasonable.  But, Defendant added insult to injury by not even requiring that the middle names of the offenders whose records Defendant misattributed to Plaintiff matched Plaintiff's middle name, or that they even matched one another.

59)    If Defendant had conducted its searches using Plaintiff's full middle name, it would have avoided the false positives.  If Defendant required that the middle names on the records it reported matched one another, it would have avoided false positives.  If Defendant had looked for additional data on the offenders whose records were matched to Plaintiff, it could have avoided false positives.

60)    Defendant makes it appear as if its matching criteria are more stringent than they are in actuality by putting Plaintiff's personally identifying information

FIRST AM. CLASS ACTION COMPLAINT
Case No. 2:20-cv-00531-JLS-KES

immediately above every record on the report, including the records that do not belong to him and do not match his personally identifying information.  For example, on page 4 of the report, Defendant's report lists Plaintiff's actual date of birth and address in the upper right corner of the page, but the remainder of the page is devoted to a record that is not Plaintiff's, and that was not associated with that address or date of birth. This tactic is misleading, as it makes it appear to the reader as though the information in the public criminal record matches Plaintiff's date of birth and address, when in reality it was matched to neither personal identifier.

61)    Other tenant screening agencies have faced governmental scrutiny for substantially similar activities.  *See*, *e.g., FTC v. Realpage, Inc*., No. 3:18-cv-2737 (N.D. Tex.) (FTC settlement with tenant screening agency which failed to comply with 15 U.S.C. § 1681e(b) because it used loose matching criteria to link potential tenants with criminal records).

62)    In addition to employing matching criteria that are obviously flawed, Defendant also fails to fully and accurately report the criminal records it includes in its reports, including so little information about the underlying criminal record itself as to make the reports vague innuendos of wrongdoing, devoid of substance or detail.  This renders the reports misleading and inaccurate because the reports suggest that very little information is available from the public record, when in reality there is plenty of information in the underlying records, Defendant just simply does not report the available information.  Specifically:

a.   The Glenn County record erroneously included on pages 4-5 of Exhibit A fails to include basic information that is available from the court's website, including the disposition, the disposition date or the case type.  It also fails to correctly and accurately list all of the charges.

b.   The Contra Costa County record erroneously included on pages 6-7 of Exhibit A fails to include basic information, including any information

11

whatsoever about what the charge was, what the disposition was, and when, how and whether the case was resolved.

c. The Orange County record erroneously included on pages 8-9 of Exhibit A fails to include basic information that is available from the court's website, including any information whatsoever about the charges and their disposition.

d. The Sacramento County record erroneously included on pages 10-11 of Exhibit A fails to include basic information that is available from the court's website, including the defendant's middle name (which does not match Plaintiff's middle name) or any information whatsoever about the charges and their disposition.

Including this kind of vague innuendo about supposed criminal activity is wholly inconsistent with the Fair Credit Reporting Act's requirement of maximum possible accuracy.

63)     Defendant also consistently fails to comply with its obligation under 15 U.S.C. 1681g to disclose its third-party vendor sources.  Rather, it discloses the public record sources from which those vendors received the information, making it appear as though Defendant went directly to the source.  This, combined with Defendant's inclusion of a variety of personal identifiers on each page containing a misattributed public record, makes it appear to consumers that the problem is with the public record itself.  In reality, the problem is not that the public records inaccurately attribute crimes to Plaintiff and class members, but the paucity of the information Defendant obtains from its vendors.

64)     Defendant's failure to accurately disclose the source of its criminal records information makes it difficult for individuals trying to clear their names, such as Plaintiff, because they are wrongly led to believe that they cannot know if the flaw is in the public record itself (such as in a case of identity theft), instead of that the flaw

is with what a third party vendor retrieved (as the incompleteness likely is here) or if the flaw is in Defendant's own matching criteria (as it also is here).

65)     In addition to the conduct set forth above, Defendant's willful conduct is further reflected by, inter alia, the following:

a.  The FCRA was enacted in 1970; Defendant has had 49 years to become compliant;

b.  Defendant and its parent company have been repeatedly sued for misreporting public record information.

c.  Defendant is a corporation with access to legal advice through its own general counsel's office and outside litigation counsel.  Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

d.  Defendant knew or had reason to know that its conduct was inconsistent with FTC guidance, case law, and the plain language of the FCRA;

e.  Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

f.  Defendant knew that matching individuals to criminal records using limited information would result in false positives.  However, it persisted in doing so;

g.  Defendant's violations of the FCRA were repeated and systematic.

66)     At all times relevant hereto, Defendant's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. Defendant's conduct was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that other consumer reporting agencies have been subject to court decisions and consumer complaints critical of similar conduct; and Defendant will continue to engage in this conduct because it believes there is greater economic value in selling over-inclusive consumer reports than in producing accurate reports.

## CLASS ACTION ALLEGATIONS

67)     Plaintiff brings this action on behalf of the following Classes:

(a)     For Defendant's violations of section 1681g of the FCRA (the "FCRA Disclosure Class"):

> All persons residing in the United States and its Territories who, during the period beginning five (5) years prior to the filing of the original complaint and continuing through the date of the resolution of this case, requested a copy of their consumer file from Defendant, to whom Defendant provided a response which included one or more items of criminal record information obtained from a third party vendor, and which did not identify the third party vendor source.

(b)     For Defendant's violations of section 1681e(b) of the FCRA (the "Inaccurate Matching Class"):

> All natural persons residing in the United States and its Territories who, during the period beginning five (5) years prior to the filing of the original complaint and continuing through the resolution of this case, were the subjects of a consumer report that Defendant prepared and delivered to a third party which (i) contained one or more items of criminal record information, (ii) Defendant's information about the criminal record does not include date of birth, social security number, or street-level address information that matches both the offender and the consumer, and (iii) the name of the offender on the report does not fully match the name of the subject of the report, meaning it does not match the first name, the middle name, and the last name of the subject of the report.

(c)     Also for Defendant's violations of section 1681e(b) of the FCRA (the "Dispute Sub-Class"):

> All members of the Inaccurate Matching Class who filed a dispute with Defendant about the accuracy of their report.

(d)     For Defendant's violations of Section 1785.14(b) of the CCRAA (the "California Inaccurate Matching Class"):

> All members of the Inaccurate Matching Class residing in California at

14

the time that they were subjects of a consumer report that Defendant prepared and delivered to a third party.

(e)    For Defendant's violations of section 1785.18 of the CCRAA ("the California Disclosure Class"):

All natural persons residing within the State of California who, during the period beginning five (5) years prior to the filing of the original complaint and continuing through the date of the resolution of this case, were the subject of a consumer report prepared by Defendant which included one or more items of criminal record information obtained from a third party vendor, and which did not identify the third party vendor source.

68)    Plaintiff seeks certification of the all Classes pursuant to Rule 23(b)(3) and certification of the California Disclosure Class and California Inaccurate Matching Subclass pursuant to Rule 23(b)(2).

69)    Numerosity:  The classes are so numerous that joinder of all class members is impracticable.  Given the volume of Defendant's business, there are hundreds or thousands of class members.

70)    Typicality: Plaintiff's claims are typical of the members of the Classes.  It is typical for Defendant to match consumers to criminal records using name alone, and to produce inaccurate and inconsistent file disclosures.  The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendant treated Plaintiff consistently with other class members in accordance with its standard policies and practices.

71)    Adequacy: Plaintiff will fairly and adequately protect the interests of the Classes because he and his experienced counsel are free of any conflicts of interest and are prepared to vigorously litigate this action on behalf of the Classes.

72)    Commonality:  This case presents common questions of law and fact, including but not limited to:

a.  Whether Defendant violated the FCRA by failing to follow reasonable

15

procedures to ensure maximum possible accuracy in reporting criminal convictions;

b.  Whether Defendant violated the FCRA by failing accurately identify its sources in response to valid requests;

c.  Whether Defendant violated the ICCRA by failing to follow reasonable procedures to ensure maximum possible accuracy in reporting criminal convictions;

d.  Whether Defendant violated the UCL by failing to follow reasonable procedures to ensure maximum possible accuracy in reporting criminal convictions;

e.  Whether Defendant's violations were willful;

f.  The proper measure of damages; and

g.  The proper injunctive relief.

73)  Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the California Disclosure Class and California Inaccurate Matching Class.

74)  Whether Defendant violated the FCRA can be easily determined by Defendant's policies and a ministerial inspection of Defendant's business records.

75)  A class action is a superior method for the fair and efficient adjudication of this controversy.  Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims.  The identities of the class members may be derived from Defendant's records and publicly available records.

76)  In view of the complexities of the issues and the expenses of litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

77)     Yet, the amount which may be recovered by individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action.  The administration of this action can be handled by class counsel or a third-party administrator, and the costs of administration will represent only a small fraction of the ultimate recovery to be achieved.

78)     Plaintiff intends to send notice to all members of the Classes to the extent required by Rule 23.  The names and addresses of the class members are available from Defendant's records.

## COUNT I
### 15 U.S.C. § 1681e(b)
**On behalf of Plaintiff, the Inaccurate Matching Class and the Dispute Sub-Class**

79)     Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

80)     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff and the Inaccurate Matching Class and Dispute Sub-Class members.

81)     The foregoing violations were negligent and/or willful.  Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other Inaccurate Matching Class and Dispute Sub-Class members under 15 U.S.C. § 1681e(b).

82)     As a result of Defendant's conduct, Plaintiff and Inaccurate Matching Class and Dispute Sub-Class members suffered actual damages including but not limited to: denial of rental opportunities, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

83)     Plaintiff and Inaccurate Matching Class and Dispute Sub-Class members are entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by the Court

17

pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II
### 15 U.S.C. § 1681g
### On Behalf of Plaintiff and the FCRA Disclosure Class

84)     Plaintiff incorporates the paragraphs above.

85)     Defendant failed to fully identify sources of the information on Plaintiff's report, despite Plaintiff's valid request pursuant to §1681g.

86)     Defendant acted in negligent, deliberate and reckless disregard of its obligations and the rights of Plaintiff and the FCRA Disclosure Class members under 15 U.S.C. § 1681g.

87)     Plaintiff and FCRA Disclosure Class members are entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT III
### Cal. Civ. Code § 1785.14(b)
### On Behalf of Plaintiff individually and the California Inaccurate Matching Class

88)     Plaintiff incorporates the paragraphs above.

89)     Defendant is a consumer credit reporting agency as defined by the CCRAA , and Defendant was required to adhere to the requirements of the CCRAA .

90)     The CCRAA required Defendant to follow reasonable procedures to assure maximum possible accuracy of the information it reported.  Cal. Civ. Code § § 1785.14(b).

91)     Defendant violated this provision by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff and the California Inaccurate Matching Class.  Specifically, Defendant misidentified Plaintiff as a criminal based only on limited information.   Defendant could and should have determined that

18

Plaintiff was not a criminal by comparing Plaintiff's middle name with those included in the criminal record.

92)   Because Plaintiff will seek housing in the future, and because of the ubiquity of pre-rental background checks, there is a real and immediate threat that Plaintiff will suffer the same injury with respect to future rental applications.

93)   Plaintiff and the California Inaccurate Matching Class are entitled to injunctive relief and to the recovery of attorneys' fees and costs.

**COUNT IV**
**Cal. Civ. Code § 1785.18**
**Asserted on behalf of Plaintiff and the California Disclosure Class**

94)   Plaintiff incorporates the paragraphs above.

95)   The CCRAA required Defendant to include the specific sources of information reported any time it included public records on a report to a third party. Cal. Civ. Code 1785.18(a).

96)   Defendant violated this provision by failing to include the specific source(s) of the criminal record information it sold about Plaintiff and members of the proposed California Disclosure Class.

97)   Because Plaintiff will seek housing in the future, and because of the ubiquity of pre-rental background checks, there is a real and immediate threat that he will suffer the same injury with respect to future rental applications.

98)   Accordingly, Plaintiff and the California Disclosure Class are entitled to injunctive relief and to the recovery of attorneys' fees and costs.

**COUNT V**
**Cal. Bus. & Prof. Code § 17200**
**Asserted on behalf of Plaintiff Individually and on behalf of the California Inaccurate Matching Class and California Disclosure Class**

99)   Plaintiff incorporates the paragraphs above.

100)   Defendant was required to adhere to the requirements of the UCL.

101)   By asserting that Plaintiff was a criminal, Defendants diminished

19

1   Plaintiff's housing opportunities.

2       102) Defendant's inaccurate reporting constituted unlawful, unfair, and

3   fraudulent business practices.

4       103) Defendant's practices were unlawful because they violate the FCRA,

5   ICRAA and/or the CCRAA.

6       a) Specifically, both the ICRAA and CCRAA required Defendant to follow

7          reasonable procedures to assure maximum possible accuracy of the information

8          it reported.  CAL. CIV. CODE §§ 1785.14(b); 1786.20(b).

9       b) Defendant violated these provisions by failing to establish or to follow

10         reasonable procedures to assure maximum possible accuracy in the preparation

11         of the consumer report it furnished regarding Plaintiff.  Specifically, Defendant

12         misidentified Plaintiff as a criminal based only on inadequate procedures for

13         obtaining criminal record information and matching it to consumers.

14      c) Further, the CCRAA and ICRAA both require Defendant to include the specific

15         sources of information reported any time it included public records on a report

16         to a third party.  CAL. CIV. CODE §§ 1785.18; 1786.28(a).

17      d) Defendant violated this provision by failing to include the specific source(s) of

18         the criminal record information it sold about Plaintiff and members of the

19         proposed California Disclosure Class.

20      104) Defendant's practices were unfair because it is unethical, immoral,

21  unscrupulous, oppressive, and substantially injurious to consumers to match them to

22  criminal records based on insufficient criteria.

23      105) Defendant's practices were fraudulent because the report recipients were

24  deceived and/or were likely to be deceived by Defendant's inaccurate representations

25  that Plaintiff was likely a criminal.

26      106) The harm caused by these business practices vastly outweighs any

27  legitimate utility they possible could have.

28

20

FIRST AM. CLASS ACTION COMPLAINT
Case No. 2:20-cv-00531-JLS-KES

107)  Because Plaintiff will seek housing in the future, and because of the ubiquity of pre-rental background checks, there is a real and immediate threat that Plaintiff will suffer the same injury with respect to future rental applications.

108)  Plaintiff and the California Inaccurate Matching Class and California Disclosure Class are entitled to injunctive relief and to the recovery of attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Classes, seek the following relief:

    a.  Determining that this action may proceed as a class action;

    b.  Designating Plaintiff as the class representative for the Classes;

    c.  Designating Plaintiff's counsel as counsel for the Classes;

    d.  Issuing proper notice to the Classes at Defendant's expense;

    e.  Declaring that Defendant violated the FCRA, CCRAA and UCL;

    f.  Declaring that Defendant acted negligently, or willfully and in deliberate or reckless disregard of the rights of Plaintiff and the Classes under the FCRA and CCRAA;

    g.  Awarding actual and/or statutory damages as provided by the FCRA and CCRAA;

    h.  Awarding punitive damages;

    i.  Granting injunctive relief enjoining Defendant from pursuing the practices complained of above as provided by the CCRAA and UCL; and,

    j.  Awarding reasonable attorneys' fees and costs and expenses;

    k.  Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## **JURY DEMAND**

Plaintiffs demand a trial by jury for all claims so triable.

BERGER MONTAGUE PC

Date:  February 3, 2020          */s/ Benjamin Galdston*
                                  Benjamin Galdston

                                  *Attorney for Plaintiff*

EXHIBIT A



## Application #1000006314115

| Applicant | Recommendation | Open Bankruptcy | Credit Score | Applicant Role | Status | Reports |
|-----------|----------------|-----------------|--------------|----------------|--------|---------|
| Michael Lewis (XXX-XX-3776) | **Accept** View Details | 0 Open Bankrupcies within the past 6 months. | 581 | Primary Renter | Completed (06-04-19 09:43 PM) | 🔵 🟡 🟢 |

### Criminal Records by state | Michael   Lewis   DOB   ██████ 1972   SSN | XXX-XX-3776

██████ San Pedro, California ██████

**Summary:** 4 Records Found in 1 States

| California (4) | | Record | First Name | Middle Name | Last Name | DOB | SSN | Dataset |
|---|---|---|---|---|---|---|---|---|
| | | 1 | MICHAEL | R | LEWIS | | No SSN Returned | CAGL2 |
| | | 2 | MICHAEL | R | LEWIS | | No SSN Returned | CACC3 |
| | | 3 | MICHAEL | R | LEWIS | | No SSN Returned | CAOR2 |
| | | 4 | MICHAEL | R | LEWIS | | No SSN Returned | CASA2 |

### Eviction Report

Michael Lewis (XXX-XX-3776),   DOB : ██████ 1972
San Pedro, California, ██████

Application No #1000006314115
Created On Date : 6/4/2019 9:43:50 PM

| State Report | | |
|---|---|---|
| **State** | **# of Records** | **Action/Report** |
| AK, AL, AR, AZ, CA, CO, CT, DC, DE, FL, GA, HI, IA, ID, IL, IN, KS, KY, LA, MA, MD, ME, MI, MN, MO, MS, MT, NC, ND, NE, NH, NJ, NM, NV, NY, OH, OK, OR, PA, PR, RI, SC, SD, TN, TX, UT, VA, VI, VT, WA, WI, WV, WY | 0 | No Records Found |



Customer Support 1- 866-755-0961

# Credit Report

6/23/2019 12:56 PM

**Name:** Michael Lewis

**Address:** ▮▮▮▮▮▮▮
San Pedro, CA ▮▮▮

**SSN Message:** SSN Match (confirmed by bureau)

---

# Michael R Lewis

**Addresses**

| Current Address | Current Address | Current Address |
|---|---|---|
| Los Angeles CA ▮▮▮ | Los Angeles CA ▮▮▮ | Sparks NV ▮▮▮ |
| Reported: 06/06 | Reported: 03/02 | |

Address Discrepancy: **The provided address does not match those in the consumers file.**

## Fraud Indicators

Description

Current address mismatch - Input does not match file.

## Profile Summary

**Record Counts**

| Tradelines: | Collections: | Public Records: | Inquiries: |
|---|---|---|---|
| 1 | 0 | 0 | 1 |

**Derogatory Items**

| Negative Tradelines: | Tradelines with any historical negatives: | Occurrence of any historical negatives: |
|---|---|---|
| 1 | 0 | 0 |

**Tradeline Summary**

| | Count | High Credit | Credit Limit | Balance | Past Due | Payment | Available |
|---|---|---|---|---|---|---|---|
| Revolving | 0 | N/A | N/A | N/A | N/A | N/A | N/A |
| Installment | 1 | N/A | N/A | N/A | N/A | N/A | N/A |
| Mortgage | 0 | N/A | N/A | N/A | N/A | N/A | N/A |
| Open | 0 | N/A | N/A | N/A | N/A | N/A | N/A |
| Closed w Bal | - | N/A | N/A | $3,254 | $3,254 | $389 | N/A |
| Total | 1 | $0 | $0 | $3,254 | $3,254 | $389 | N/A |

# ResidentScore

| ResidentScore | Score Factors |
|---|---|
| **581** | Not enough revolving debt experience<br>Too few bank revolving accounts<br>Not enough retail debt experience<br>Too few bankcard accounts<br>Inquiries impacted the credit score |

# Tradelines

**Tradelines Total**

| Count | Balance Total | Total Credit Limit | Total Past Due |
|---|---|---|---|
| 1 | $3,254 | N/A | $3,254 |

**Trades**

## THE CALIF CU

| Industry: | Credit Union and Finance other than personal | Opened: | 02/02 | Balance: | $3,254 |
|---|---|---|---|---|---|
| Loan Type: | Automobile | Verified: | 04/17 | Past Due: | $3,254 |
| Loan Terms: | Installment 060 Monthly | Closed: | 10/13 | Credit Limit: | N/A |
| Account Type: | Joint account | Paid: | | Payment Amount: | $389 |

| Status: | 09: Charged off as Bad Debt |
|---|---|
| Remarks: | Profit and loss writeoff |
| Notes: | Automated account |

**Payment History**
No payment history reported

# Inquiries

| Date | Name | Kind of Business |
|---|---|---|
| 07/18/2017 | CCB | Miscellaneous |

## 🔎 Criminal Report

6/14/2019 4:11 PM

### Applicant Information Submitted

Date of Birth: ███ 1972
Address: ████████
San Pedro, CA ███

Name: Michael Lewis

# MICHAEL R LEWIS JR



Dataset: CA Glenn County Superior Court
DOB: N/A
Age: N/A
SSN: N/A
Residence: N/A

### Aliases
No aliases found

### Physical Features

**PHYSICAL DETAILS**
Sex: U

**PERSON PHYSICAL FEATURES**
No physical features listed

---

### Summary

| Incident(s): | Booking(s): | Arrest(s): |
| --- | --- | --- |
| 0 | 0 | 0 |
| Court Action(s): | Sentencing(s): | Supervision(s): |
| 1 | 0 | 0 |

### Comments

---

### Court Action

Activity Type: CRIMINAL/TRAFFIC

Court Record Id: ST160935

### Court
**ORGANIZATION JURISDICTION**
Jurisdiction Description: CA GLENN COUNTY SUPERIOR COURT

### Court Charge
Charge Sequence Id: 1
Charge Description: DESIGNATED SPEED/EXCESS OF 10 MPH/MORE

**CHARGE CLASSIFICATION**

Charge Degree: INFRACTION (T)

Charge Filing Date: 2013-05-13

**CHARGE STATUTE**

Statute Code Id: 22406(A-F)

## Court Charge

Charge Sequence Id: 2

Charge Description: NOT ELIGIBLE FOR TRAFFIC SCHOOL

Charge Filing Date: 2013-05-13

**CHARGE STATUTE**

Statute Code Id: NO-TVS

## Court Charge

Charge Sequence Id: 3

Charge Description: PROOF FINANCIAL RESPONS. NON-ALCOHOL

**CHARGE CLASSIFICATION**

Charge Degree: INFRACTION (T)

Charge Filing Date: 2013-05-13

**CHARGE STATUTE**

Statute Code Id: 16028(A) C

Appealed From Lower Court: false

## Case Filing

Activity Date: 2013-05-13

## 👓 Criminal Report

6/14/2019 4:12 PM

### Applicant Information Submitted

Date of Birth: ███ 1972
Address: ████████
San Pedro, CA ██

Name: Michael Lewis

# MICHAEL R LEWIS



| | |
|---|---|
| Dataset: | CA Contra Costa Courts |
| DOB: | N/A |
| Age: | N/A |
| SSN: | N/A |
| Residence: | N/A |

### Aliases
No aliases found

### Physical Features

**PHYSICAL DETAILS**
Sex: U

**PERSON PHYSICAL FEATURES**
No physical features listed

---

### Summary

| Incident(s): | Booking(s): | Arrest(s): |
|:---:|:---:|:---:|
| 0 | 0 | 0 |
| Court Action(s): | Sentencing(s): | Supervision(s): |
| 1 | 0 | 0 |

### Comments

---

### Court Action

Activity Type: CRIMINAL/TRAFFIC

Court Record Id: 373574

### Court
**ORGANIZATION JURISDICTION**
Jurisdiction Description: WALNUT GREEK

### Court Charge
Charge Sequence Id: 1
Charge Count: 1
Charge Filing Date: 2016-10-05

Appealed From Lower Court: false

## Case Filing

Activity Date: 2016-10-05

## 🔍 Criminal Report

6/14/2019 4:12 PM

### Applicant Information Submitted

Date of Birth: ████ 1972
Address: ████████
San Pedro, CA ████████

Name: Michael Lewis

# MICHAEL R LEWIS



Dataset: CA Orange Superior Court
DOB: N/A
Age: N/A
SSN: N/A
Residence: N/A

### Aliases
No aliases found

### Physical Features

**PHYSICAL DETAILS**
Sex: U

**PERSON PHYSICAL FEATURES**
No physical features listed

---

### Summary

| Incident(s): | Booking(s): | Arrest(s): |
|:---:|:---:|:---:|
| 0 | 0 | 0 |
| **Court Action(s):** | **Sentencing(s):** | **Supervision(s):** |
| 1 | 0 | 0 |

### Comments

---

### Court Action

Activity Type: CRIMINAL/TRAFFIC

Court Record Id: CMZ220215

### Court Charge

Charge Sequence Id: 1
Charge Description: CITATION

**CHARGE DISPOSITION**

Charge Disposition Date: 2014-04-17
Charge Filing Date: 2014-03-05
Appealed From Lower Court: false

Case Filing

Activity Date: 2014-03-05

## 🐾 Criminal Report

6/14/2019 4:12 PM

### Applicant Information Submitted

Date of Birth: ████ 1972
Address ████████
San Pedro, CA ████

Name: Michael Lewis

# MICHAEL R LEWIS



Dataset:    CA Sacramento Superior Court
DOB:        N/A
Age:        N/A
SSN:        N/A
Residence:  N/A

### Aliases
No aliases found

### Physical Features

**PHYSICAL DETAILS**
Sex: U

**PERSON PHYSICAL FEATURES**
No physical features listed

---

### Summary

| Incident(s): | Booking(s): | Arrest(s): |
|:---:|:---:|:---:|
| 0 | 0 | 0 |

| Court Action(s): | Sentencing(s): | Supervision(s): |
|:---:|:---:|:---:|
| 1 | 0 | 0 |

### Comments

---

### Court Action

Activity Type: CRIMINAL/TRAFFIC

Court Record Id: 14T01255

### Court
**ORGANIZATION JURISDICTION**
Jurisdiction Description: CA SACRAMENTO SUPERIOR COURT

### Court Charge
Charge Sequence Id: 1
Charge Filing Date: 2014-03-21
Appealed From Lower Court: false

Case Filing

Activity Date: 2014-03-21

 **Background Data Solutions**

## Application Summary

**Michael Reid Lewis**
XX/XX/1972

Status: 🟢

| | |
|---|---|
| Application #: | B47099529E808 |
| Created On: | 08/09/2019 14:38:11 |
| Rental Property State: | ZZ |

### Most Wanted

| Search | State | # of Records | Action/Status |
|---|---|---|---|
| Instant | Most Wanted List | 0 | 0 Records Found |

### Sex Offender

| Search | State | # of Records | Action/Status |
|---|---|---|---|
| Instant | National Sex Offender | 0 | 0 Records Found |

### Federal

| Search | State | # of Records | Action/Status |
|---|---|---|---|
| Instant | Potential OFAC Match | 0 | 0 Records Found |

### Criminal

| Search | State | # of Records | Action/Status |
|---|---|---|---|
| Instant | Illinois, Indiana, Michigan, Ohio, Iowa, Kansas, Minnesota, Missouri, Nebraska, North Dakota, Wisconsin, New Jersey, New York, Pennsylvania, Connecticut, Maine, New Hampshire, Rhode Island, Vermont, Alabama, Mississippi, Tennessee, District of Columbia, Florida, Georgia, Kentucky, Maryland, North Carolina, South Carolina, Virginia, Arkansas, Louisiana, Oklahoma, Texas, Arizona, Colorado, Idaho, Montana, Nevada, New Mexico, Utah, Alaska, California, Hawaii, Oregon, Washington, West Virginia | 0 | 0 Records Found |


TransUnion | Background Data Solutions

### Eviction

| Search | State | # of Records | Action/Status |
|---|---|---|---|
| Instant | Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virgin Islands, Virginia, Washington, West Virginia, Wisconsin, Wyoming | 0 | 0 Records Found |

Customer Support 1-800-568-5665   |   © 2006-2009 TransUnion LLC, All Rights Reserved. Use of this site is restricted to authorized users only.